### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
**Miami Division**

In re:                                          Chapter 11

PROFUNDITY LLC                                  Case Nos.        23-16720-CLC
NABOO ROYAL CRUISER LLC                                          23-16725-CLC
                                                                (Jointly Administered)

      Debtors.

_____/

## SECOND AMENDED[1] JOINT CHAPTER 11 PLAN OF LIQUIDATION

      Respectfully Submitted on this the 26th day of August, 2024.

Edelboim Lieberman PLLC
2875 NE 191st St.
Penthouse One
Miami, FL 33180
D: 305-768-9909
F: 305-928-1114
Email: brett@elrolaw.com


By: */s/ Brett D. Lieberman*
Brett Lieberman, Esq.
Florida Bar No. 69583

---

[1] Amended to, among other things, eliminate certain typographical errors and editorial comments in Debtors' *First Amended Joint Chapter 11 Plan of Liquidation,* to elaborate on certain definitions, and updated to reflect that the *Debtors' Expedited Motion To Approve Compromise And Settlement With Gulfgen, LLC, Vision Depot Ltd. And Others On Shortened Notice* (ECF #576) (the "GV Settlement") was approved (pending entry of an order by this Court) and that Debtor Naboo filed its 363 Motion (as defined herein).

**Table of Contents**

I.    INTRODUCTION ................................................................................... 3

II.   DEFINITIONS AND CONSTRUCTION OF TERMS ........................................ 3

IV.   CLASSIFICATION OF CLAIMS AND INTERESTS ..................................... 14

V.    TREATMENT OF CLAIMS AND EQUITY INTERESTS ............................... 16

VI.   MEANS FOR IMPLEMENTATION ......................................................... 19

VII.  PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN ...................... 22

VIII.   EXECUTORY CONTRACTS ................................................................ 25

IX.   INJUNCTION ................................................................................. 25

X.    CONDITIONS PRECEDENT TO AND OCCURRENCE OF THE ........................... 27

EFFECTIVE DATE ................................................................................. 27

XI.   RETENTION OF JURISDICTION ........................................................... 28

XII.  MISCELLANEOUS PROVISIONS .......................................................... 29

## I.    INTRODUCTION

The Debtors and Debtors-In-Possession, Profundity LLC ("Profundity") and Naboo Royal Cruiser, LLC ("Naboo", together, the "Debtors"), hereby propose the Debtors' Amended Joint Chapter 11 Plan of Liquidation (as amended, the "Plan"). The Debtors are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code and the Debtors support this Plan and encourage the Holders of impaired Claims entitled to vote hereunder to vote to accept this Plan.

## II.  DEFINITIONS AND CONSTRUCTION OF TERMS

### A.    <u>Definitions</u>

As used herein, the following terms have the respective meanings specified below, unless the context otherwise requires:

1.      "<u>**363 Sale**</u>" means a sale of both of the Debtors' Aircrafts as set forth in, and in accordance with, the 363 Sale Documents, which have been or will be consummated on a 363 Sale Effective Date.  The 363 Sale of Profundity's Aircraft was approved by this Court on July 12, 2024 (ECF #530), and closed on or around July 16, 2024. The 363 Sale of Naboo's Aircraft has been negotiated and it is anticipated that Naboo will file a 363 Motion on or before August 21, 2024.

2.      "<u>**363 Sale Agreement**</u>" means an asset purchase agreement, by and among the Debtors (or one of them) as Sellers, and a prospective purchaser of one or both of the Aircrafts, which is subject to the approval of the Bankruptcy Court, as amended, modified or supplemented from time to time, which shall be in form and substance satisfactory to the Debtors.  On or about June 12, 2024, Debtor Profundity entered into a 363 Sale Agreement with Avire, LLC for the purchase and sale of Profundity's Aircraft. On July 2, 2024, Profundity filed a 363 Sale Motion seeking approval of the subject sale. ECF #491. On July 12, 2024, the Court granted Profundity's 363 Sale Motion (ECF #530) and the Closing Date of the Profundity sale was on or about July 16, 2024.  On or about August 16, 2024, Debtor Naboo entered into a 363 Sale Agreement with Aircraft Partsbase LLC for the sale of the Naboo Aircraft that is subject to, among other things, an inspection contingency, bankruptcy court approval, and bankruptcy court approval of a related third party broker agreement through which the third party broker would receive a broker fee in the amount of $150,000. On August 23, 2024, Naboo filed a 363 Sale Motion seeking approval of the Naboo 363 Sale Agreement and related third party broker fee agreement. ECF #603.

3.      "<u>**363 Sale Documents**</u>" means a 363 Sale Agreement, a 363 Sale Order, and all documents, instruments, and agreements executed and delivered in connection with the consummation of the transactions contemplated by a 363 Sale Agreement, which shall be in form and substance satisfactory to the Debtors.

4.      "<u>**363 Sale Effective Date**</u>" or "<u>**Closing Date**</u>" means the date on which the conditions specified in a 363 Sale Agreement have been satisfied or waived and a 363 Sale

3

has been substantially consummated.  The 363 Sale Effective Date of the Profundity sale as on or about July 16, 2024. The Naboo 363 Sale Agreement includes that delivery of the Naboo Aircraft will not take place later than September 25, 2024, absent agreement of the Parties. The Naboo 363 Sale Agreement is subject to a variety of conditions including, among others, an inspection contingency, bankruptcy court approval, and bankruptcy court approval of a related third party broker agreement through which the third party broker would receive a broker fee in the amount of $150,000.

5.      "**363 Sale Motion**" means a Debtor's motion seeking approval of a 363 Sale Agreement and any related relief thereto that is filed with the Bankruptcy Court, which shall be in form and substance satisfactory to the Debtors. On July 2, 2024, Profundity filed a 363 Sale Motion. ECF #491. On August 23, 2024, Naboo filed a 363 Sale Motion. ECF #603.

6.      "**363 Sale Order**" means an Order of the Bankruptcy Court approving a 363 Sale Motion, which shall be in form and substance satisfactory to the Debtors. . On July 12, 2024, the Court granted Profundity's 363 Sale Motion (ECF #530). The hearing on Naboo's 363 Sale Motion is set for August 28, 2024.

7.      "**Administrative Expense Claim**" means any Claim constituting an actual, necessary cost or expense of administering the Chapter 11 Cases under sections  503(b), 507(a)(2) and 507(b) of the Bankruptcy Code including, without limitation, (a) any actual and necessary costs and expenses of preserving the Estates incurred on or after the Petition Date until and including the Effective Date, (b) any fees or charges assessed against the Estates under section 1930 of title 28 of the United States Code, and (c) all Claims arising under section 503(b)(9) of the Bankruptcy Code.

8.      "**Administrative Expense Claim Bar Date**" means the deadline of on or before August 21, 2024, for Holders of Administrative Expense Claims accruing for  the period from the Petition Date through the Effective Date to file a request with the Bankruptcy Court for payment of such Administrative Expense Claim in the manner indicated in Section V herein.

9.      "**Aircrafts**" mean: (i) the 1992 Gulfstream G-IV jet, bearing US Registration number N144PK, owned by Profundity (the "N144PK"); and (ii) the 1996 Gulfstream G-IV jet, bearing US registration number N450MB, owned by Naboo (the "N450MB").

10.      "**Allowed**" means, with respect to Claims: (a) any Claim, proof of which was timely Filed (or for which Claim, under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court, a proof of Claim is not or shall not be required to be Filed); (b) any Claim which has been or hereafter is listed by the Debtors in the Schedules as liquidated in amount and not disputed or contingent and for which no proof of Claim has been Filed; or (c) any Claim expressly allowed under the Plan or a Final Order of the Bankruptcy Court; provided that any Claim described in clauses (a) and (b) shall be considered Allowed only if and to the extent that with respect to such Claim, no objection to the allowance thereof has been interposed within the applicable period fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such objection is interposed and the Claim or any portion thereof is subsequently Allowed by a Final Order; provided, further,

that Claims Allowed solely for purposes of voting on this Plan and Disclosure Statement under an Order of the Bankruptcy Court shall not be considered "Allowed" Claims hereunder.  An Allowed Claim shall be net of any valid setoff exercised with respect to such Claim under the provisions of the Bankruptcy Code and applicable law. Moreover, any portion of a Claim that is satisfied, released, or waived during the Chapter 11 Cases is not an Allowed Claim. Unless otherwise specified in the Plan, section 506(b) of the Bankruptcy Code, or by Final Order of the Bankruptcy Court, "Allowed" Claims shall not, for purposes of Distributions under the Plan,  include interest on such Claims accruing from and after the Petition Date.

11.    "**Assets**" means all tangible and intangible assets of every kind and nature of the Debtors within the meaning of section 541 of the Bankruptcy Code.

12.    "**Avoidance Actions**" means all rights to avoid transfers or distributions and recover any such avoided transfers or distributions for the benefit of the Estates under chapter 5 of the Bankruptcy Code or otherwise, including, but not limited to, Bankruptcy Code sections 502(d), 510, 541, 542, 544, 545, 547, 548, 549, 550, 551, and 553, or otherwise under the Bankruptcy Code or under similar or related state or federal statutes and common law, including, without limitation, all preference, fraudulent conveyance, fraudulent transfer, and/or other similar avoidance claims, rights, and causes of action, whether or not demand has been made  or litigation has been commenced as of the Effective Date.

13.    "**Ballot**" means the ballot on which each Holder of a Claim entitled to vote on the acceptance or rejection of the Plan casts such vote.

14.    "**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101, et seq.

15.    "**Bankruptcy Court**" or "**Court**" means the United States Bankruptcy Court for the Southern District of Florida, having jurisdiction over the Chapter 11 Cases, or if such Court ceases to exercise jurisdiction over the Chapter 11 Cases, such court or adjunct thereof that exercises jurisdiction over the Chapter 11 Cases in lieu of the United States Bankruptcy Court for the Southern District of Florida.

16.    "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time.

17.    "**Business Day**" means any day other than a Saturday, Sunday, or any other day on which the Bankruptcy Court is closed by law, Order, administrative Order, or otherwise.

18.    "**Cash**" means legal tender of the United States of America and equivalents thereof.

19.    "**Causes of Action**" means all claims, actions (including the Avoidance

Actions), causes of action, choses in action, suits, refunds, turnovers, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims, and crossclaims of any of the Debtors and/or any of the Estates against any Person, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted, known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, foreseen or unforeseen, and any and all commercial tort claims against any Person, arising from or relating to any act or omission or other event occurring at any time prior to (and including) the Effective Date; and subject, however, to any releases provided in the Plan, the Plan Confirmation Order,the 363 Sale Order, or any other Final Order of the Bankruptcy Court. For the avoidance of doubt, the Causes of Action shall not include any Causes of Action against the Released Parties.

20.    "**Chapter 11 Cases**" means the chapter 11 cases commenced when the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on the Petition Date and with the following case numbers: 23-16720-CLC and 23-16725, which Chapter 11 Cases are jointly administered under case number 23-16720-CLC.

21.    "**Claim**" has the meaning set forth in section 101(5) of the Bankruptcy Code.

22.    "**Claims Objection Deadline**" means A u g u s t  2 1 ,  2 0 2 4 .

23.    "**Class**" means any group of substantially similar Claims or Interests classified by the Plan under sections 1122 and 1123(a)(1) of the Bankruptcy Code.

24.    "**Consummation**" or "**Consummate**" means the occurrence of or to have achieved the Effective Date.

25.    "**Creditor**" means any Person that is the Holder of a Claim against any of the Debtors.

26.    "**Debtor**" means one of the debtors in the Chapter 11 Cases, Profundity or Naboo.

27.    "**Debtors**" means both debtors in the Chapter 11 Cases, Profundity and Naboo.

28.    "**Debtors in Possession**" means the Debtors in their capacity as debtors in possession in the Chapter 11 Cases under sections 1101, 1107(a), and 1108 of the BankruptcyCode.

29.    "**DIP Lender**" means TapJets Holdings, Inc., the lender authorized to loan funds to the Debtors post-petition pursuant to the Court's *Interim Order (A) Authorizing Debtors to Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 364,(c)(1), 346(c)(2), 364(c)(3), and 364(e); (B) Granting Liens and Superpriority Administrative Expense Status; (C) Granting Related Relief; and (D) Setting Continued Hearing on Request to Obtain Additional Post-Petition Financing* (ECF #210) (the "Interim DIP Order") and

*Final Order (A) Authorizing Debtors to Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 364,(c)(1), 346(c)(2), 364(c)(3), and 364(e); (B) Granting Liens and Superpriority Administrative Expense Status; and (C) Granting Related Relief* (ECF #327) (the "Final DIP Order").

30.    "**Directors and Officers**" means the current and former directors and officers of the Debtors.

31.    "**Disclosure Statement**" means the joint disclosure statement including, without limitation, all exhibits,supplements, appendices, and schedules hereto, either in their present form or as the same maybe altered, amended, or modified from time to time.

32.    "**Disputed**" means, with respect to any Claim or any portion thereof, (A) any Claim that (i) is, or hereafter may be listed on the Schedules as disputed, contingent, or unliquidated and for which no proof of Claim has been Filed; or (ii) is objected to in whole or in part or subject to a request for estimation prior to the Claims Objection Deadline, which objection or request for estimation has not been withdrawn or resolved; and (B) any Claim that is not an Allowed Claim or a disallowed Claim in whole or in part by settlement or Final Order.

33.    "**Distribution**" means Cash, property, interests in property or other value distributed to Holders of Allowed Claims, or their designated agents, as applicable, under the Plan.

34.    "**Distribution Date**" means i) with respect to Profundity, within 10 days after the Plan Confirmation Order becomes a Final Order; and ii) with respect to Naboo the date within 14 days of the Closing Date of the 363 Sale of the N450MB, but no later than October 28, 2024.

35.    "**Effective Date**" means the date on which the conditions specified in Section X.A of the Plan have been satisfied or waived and the transactions contemplated hereunder have been substantially consummated, but no later than October 28, 2024.

36.    "**Entity**" means an entity as defined in section 101(15) of the Bankruptcy Code.

37.    "**Equity Interest**" means any and all issued, unissued, authorized or outstanding shares of stock or limited company interests in any Debtor.

38.    "**Estates**" means the bankruptcy estates of the Debtors created upon the commencement of the Chapter 11 Cases, including all of the Assets.

39.    "**Executory Contract**" means any executory contract or unexpired lease as of the Petition Date between any of the Debtors and any other Person or Persons.

40.    "**File**", "**Filed**", or "**Filing**" means file, filed, or filing with the Bankruptcy

Court in the Chapter 11 Cases or any other related proceedings.

41.    "**Final Order**" means an Order of the Bankruptcy Court or a Court of competent jurisdiction to hear appeals from the Bankruptcy Court with respect to the relevant subject matter, that has not been reversed, stayed, modified, or amended and as to which the time to appeal, to petition for certiorari, or to move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending; provided, however, that the possibility that a motion under Rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, maybe Filed with respect to such order shall not cause such order not to be a Final Order.

42.    "**First Day Motions**" has the meaning set forth in Section III.D.1 of this Disclosure Statement.

43.    "**General Administrative Expense Claim**" means any Administrative Expense Claim or any Professional Fee Administrative Claim.

44.    "**General Bar Date**" means November 1, 2023, the deadline for Creditors and Holders of any Claims, except for a Governmental Unit, to file a proof of Claim against any of the Debtors for a Claim that arose prior to the Petition Date.

45.    "**General Unsecured Claim**" means any Claim against the Debtors that arose or is deemed or determined by the Bankruptcy Code or Bankruptcy Court, as the case may be, to have arisen before the Petition Date and that is not: (i) a Secured Claim, (ii) an Administrative Expense Claim, (iii) a Professional Fee Administrative Claim, (iv) a Statutory Fee Claim, (v) a Priority Tax Claim, (vi) a Priority Claim or any other Claim entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court, or (vii) any Claim that constitutes an Interest.   For the avoidance of doubt, the Lender Deficiency Claims shall be General Unsecured Claims.

46.    "**Governmental Unit**" has the meaning set forth in section 101(27) of the Bankruptcy Code.

47.    "**Governmental Unit Bar Date**" means February 20, 2024, the deadline for Governmental Units to file a proof of Claim against any of the Debtors for a Claim that arose prior to the Petition Date.

48.    "**Gulfgen**" means Gulfgen LLC and all predecessors and successors in interest.

49.    "**GV Settlement**" means the compromise and settlement among the Debtors, Gulfgen, and others approved by the Court during the August 19, 2024 hearing (pending entry of an order). Motion at ECF #576.

50.    "**Holder**" means the legal or beneficial holder of any Claim or Interest.

51.    "**IRC**" means the Internal Revenue Code of 1986, as amended.

52.    "**IRS**" means the Internal Revenue Service.

53.    "**Lien**" means any mortgage, pledge, deed of trust, assessment, security interest, lease, lien, adverse claim, levy, charge, right of first refusal or surrender right, or other encumbrance of any kind, including any "lien" as defined in section 101(37) of the Bankruptcy Code.

54.    "**Litigation Claims**" means any and all claims and Causes of Action of any Debtor and/or the Estates against any Person, including but not limited to all claims and Causes of Action arising under Chapter 5 of the Bankruptcy Code, Avoidance Actions and actions to collect accounts receivables except that the Debtors release, waive and discharge TapJets, Inc.; TapJets Holdings, Inc.; Maria Kesselman; Eugene Kesselman; the individual known to the Parties as Individual-1; Peter Nomikos; Gulfgen LLC; Liu Hui; and Vision Depot Ltd., from any and all causes of action consistent with the GV Settlement upon its approval.

55.    "**Litigation Proceeds**" means the net proceeds of the Litigation Claims.

56.    "**Local Rules**" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of Florida, as amended from time to time.

57.    "**Naboo AP**" means that certain Adversary Proceeding, Adv. Pro. Case No. 23-01308-CLC, which has been or will be dismissed with prejudice consistent with the GV Settlement upon its approval.

58.    "**Order**" means an order, opinion, or judgment of the Bankruptcy Court as entered on the docket.

59.    "**Person**" means an individual, a corporation, a partnership, an association, a jointstock company, a joint venture, an estate, a trust, an unincorporated association or organization, agovernmental unit or any agency or subdivision thereof or any other entity.

60.    "**Petition Date**" means August 23, 2023, the date on which the Debtors commenced the Chapter 11 Cases.

61.    "**Plan**" means the Debtors' first amended joint chapter 11 plan of liquidation, including, without limitation, all exhibits, supplements, appendices, and schedules thereto, either in their present form or as the same may be altered, amended, or modified from time to time.

62.    "**Plan Confirmation Date**" means the date on which the Bankruptcy Court entersthe Plan Confirmation Order.

63.    "**Plan Confirmation Hearing**" means the hearing to be held by the

Bankruptcy Court to consider approval and confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

64.     "**Plan Confirmation Order**" means an Order entered by the Bankruptcy Court approving and confirming the Plan on a final basis under section 1129 of the Bankruptcy Code.

65.     "**Plan Documents**" means the Plan, the Disclosure Statement, and all of the exhibits and schedules attached to any of the foregoing.

66.     "**Plan Proponents**" means the Debtors.

67.     "**Prime Jet**" means Prime Jet US, LLC.

68.     "**Priority Claim**" means any Claim accorded priority in right of payment under Bankruptcy Code section 507(a), that is not otherwise a Priority Tax Claim, a Statutory Fee Claim, an Administrative Expense Claim, or a Professional Fee Administrative Claim.

69.     "**Priority Tax Claim**" means a Claim that is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

70.     "**Privilege**" means the attorney-client privilege, work product protections or other immunities (including without limitation those related to common interests or joint defenses with other parties), or protections from disclosure of any kind held by the Debtors or their Estates.

71.     "**Professional**" means any professional Person employed by the Debtors in the Chapter 11 Cases under section 327, 363, or 1103 of the Bankruptcy Code or otherwise under an Order of the Bankruptcy Court.

72.     "**Professional Fee Administrative Claim**" means a Claim for compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code, including Claims of any Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date.

73.     "**Professional Fee Escrow**" means an account to be funded from the proceeds of the 363 Sale Agreement on or prior to the Effective Date in an amount equal to the aggregate amount of Allowed unpaid fees for all Professionals through the Plan Effective Date.

74.     "**Profundity AP**" means that certain Adversary Proceeding, Adv. Pro. Case No. 23-01307-CLC, which has been or will be dismissed with prejudice consistent with the GV Settlement upon its approval.

75.     "**Pro Rata**" means the proportion that an Allowed Claim or Allowed Interest

in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

76.    "**Purchaser**" means a  purchaser that enters into a 363 Sale Agreement with a Debtor. With respect to Profundity, the Purchaser is Avire, LLC. With respect to Naboo, the Purchaser is Aircraft Partsbase LLC.

77.    "**Rejection Damages Claim**" means a Claim for damages arising out of the rejection of an Executory Contract or unexpired lease.

78.    "**Related Persons**" means, with respect to any Person, such  Person's predecessors, successors, assigns and present and former shareholders, former member, affiliates (whether by operation of law or otherwise), subsidiaries, principals, employees, agents, officers, directors, managers, trustees, partners, members, professionals, representatives, advisors, attorneys, financial advisors, accountants, investment bankers, and consultants, and any Person claiming by or through them.

79.    "**Schedules**" mean the schedules of assets and liabilities, schedules of executory contracts, schedules of co-debtors and statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code, as may be amended, modified or supplemented from time to time.

80.    "**Secured Claim**" means a Claim that is secured (a) by a Lien that is valid, perfected, and enforceable under the Bankruptcy Code or applicable non-bankruptcy law or by reason of an Order, (b) as a result of rights of setoff under section 553 of the Bankruptcy Code, but in any event only to the extent of the value determined in accordance with section 506(a) of the Bankruptcy Code, of the Holder's interest in the Estate's interest in such property (unless an election has been made under section 1111(b) of the Bankruptcy Code on or prior to the Plan Confirmation Date) or to the extent of an amount subject to such setoff, as applicable, or (c) Allowed pursuant to the Plan or separate Order of the Bankruptcy Court, as a Secured Claim.

81.    "**Statutory Fees**" means any and all fees payable to the U.S. Trustee under section 1930 of title 28 of the United States Code and any interest thereupon.

82.    "**MSR**" means *Prime Jet US, LLC's Motion for Relief From Automatic Stay* (ECF #22) and all attachments thereto.

83.    "**Unclaimed Distribution**" means a Distribution that is not claimed by a Holder of an Allowed Claim on or prior to the Unclaimed Distribution Deadline.

84.    "**Unclaimed Distribution Deadline**" means, in each instance, the date that is one hundred and twenty (120) days from the Distribution Date.

85.    "**U.S. Trustee**" means the Office of the United States Trustee for the Southern District of Florida.

86.    "**Voting Deadline**" means the deadline ascribed by the Bankruptcy Court for parties in interest to submit a ballot either accepting or rejecting the Plan.

## B.    **Interpretation: Application of Definitions and Rules of Construction**

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter. Unless otherwise specified, all section, article, schedule, or exhibit references in this Plan are to the respective section in, article of, Schedule to, or Exhibit to this Plan. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection or clause  contained in this Plan. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of this Plan A term used herein that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affectthe provisions of this Plan. Bankruptcy Rule 9006 shall apply to all computations of time periods prescribed by this Plan unless otherwise set forth herein or provided by the Bankruptcy Court

## III.    TREATMENT OF UNCLASSIFIED CLAIMS

## A.    **General Administrative Expense Claims**

All Allowed General Administrative Expense Claims other than Allowed Professional Fee Administrative Claims, will be paid from the Cash available to the Debtor against which the Claim is Allowed,  upon the later of (i) a Distribution Date, (ii) the date such Administrative Expense Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court, and (iii) the date such Allowed Administrative Expense Claim comes due in the ordinary course of business, with such Administrative Expense Claims being paid in the full amount Allowed in Cash (or such other treatment that is less favorable than the treatment provided herein as may be agreed upon by a Holder of any such Allowed Administrative Expense Claim and the Debtor. To be eligible to receive Distributions under the Plan on account of an Administrative Expense Claim that is not otherwise expressly allowed by the Plan, a request for payment of an Administrative Expense Claim must have been or be filed on or before the Administrative Expense Claim Bar Date; provided, however, that Claims arising under section 503(b)(9) of the Bankruptcy Code shall be and remain subject to the General Bar Date. Any Administrative Expense Claim that is not timely asserted by the Administrative Expense Claim Bar Date or the General Bar Date, as applicable, in accordance herewith and the General Bar Date Order, as applicable, shall be deemed disallowed under the Plan and shall be forever barred against the Debtors, the Estates, or any of their Assets or property, and any Purchaser, and the Holder thereof shall be enjoined  from commencing or continuing any action, employment of process, or act to collect, offset, recoup, or recover such Claim.

Allowed Professional Fee Administrative Claims shall be paid in full and satisfied on or before the later of (i) a Distribution Date, and (ii) the date such Professional Fee

Administrative Claim becomes an Allowed Claim by a Final Order of the Bankruptcy Court, to be paid in the full Allowed amount in Cash (or such other treatment less favorable than the treatment provided herein as may be agreed upon by a Holder of any such Allowed Professional Fee Administrative Claim and the Debtors and approved by the Bankruptcy Court.

The deadline for submission by **all** Professionals for Bankruptcy Court approval of Professional Fee Administrative Claims has been set by order of the Court.  Any Professional or other Person or Entity that is required to File and serve a request for approval of a Professional Fee Administrative Claim that fails to file and serve a timely request will be forever barred, estopped, and enjoined from asserting any request for payment of a Professional Fee Administrative Claim or participating in Distributions under the Plan  on account thereof. All Professionals employed by the Debtors shall provide to the Debtors an estimate of their accrued professional fees and expenses through the date of the Plan Confirmation Hearing at least fourteen (14) days prior to the Plan Confirmation Hearing. The aggregate amount of the Allowed Professional Fee Administrative Claims shall be held in the Professional Fee Escrow if available. The Professional Fee Escrow shall be funded on or before the Plan Confirmation Hearing if possible. Upon approval of professional fees consistent with the procedures established by the Bankruptcy Court, the Debtors shall release the approved amounts to the Professionals from the Professional Fee Escrow.

### B.    <u>Superpriority Administrative Expense Claims of the DIP Lender</u>

All Allowed Superpriority Administrative Expense Claims authorized under the Interim DIP Order and Final DIP Order will be paid from the Cash available to the Debtors from proceeds of the 363 Sale Agreements.

Allowed Superpriority Administrative Expense Claims, in full and complete satisfaction of such Claims, shall be paid in full upon the later of (i) a Distribution Date, (ii) the date such Administrative Expense Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court, and (iii) the date such Allowed Administrative Expense Claim comes due pursuant to the Final DIP Order or such other less favorable treatment as may be agreed upon by a Holder of any such Allowed Superpriority Administrative Expense Claim and the Debtors. To be eligible to receive Distributions under the Plan on account of a Superpriority Administrative Expense Claim that is not otherwise expressly allowed by the Plan, a request for payment of an Superpriority Administrative Expense Claim must have been or be filed on or before the Administrative Expense Claim Bar Date.

### C.    <u>Priority Tax Claims</u>

Each Holder of an Allowed Priority Tax Claim, shall receive in full satisfaction of such Allowed Priority Tax Claim, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, payment in Cash equal to the Allowed amount of such Priority Tax Claim, on the later of (i) the Effective Date and (ii) the date such Priority Tax Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court, or such other treatment as may be agreed upon by any such Holder of a Priority Tax Claim and the Debtors (.  The Debtors reserve the right to prepay such Allowed Priority Tax Claim at any time. On the Effective Date, any

Liens securing any Allowed Priority Tax Claim shall be deemed released, terminated, and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any Person.

**D.    <u>Statutory Fees</u>**

Statutory Fees from the Petition Date through the Effective Date shall be paid by the Debtors on a Distribution Date.  Statutory Fees relating to any period of time after the Effective Date shall be paid by the Debtors.

## IV.    CLASSIFICATION OF CLAIMS AND INTERESTS

For purposes of voting, confirmation and making Distributions under the Plan, the Plan contemplates separate treatment for the claimants as against each Debtor. Claims for each of the Debtors – other than Administrative Expense Claims, Professional Fee Administrative Claims, Priority Tax Claims, and Statutory Fees Claims – are classified for all purposes, including voting, confirmation, and Distribution under the Plan, as follows:

| Profundity and Naboo | | | | |
|---|---|---|---|---|
| **Class** | **Type** | **Status Under Plan** | **Voting Status** | **Claim Treatment** |
| 1 | Secured Claim of Prime Jet against Naboo (Claim 2) | Impaired | Entitled to Vote | Class 1 claims of $1,111,456.99 (the "PJ Naboo Secured Claim") have been satisfied in full by payment of $850,000 at the closing of the 363 Sale of the N450MB. The balance of the PJ Naboo Secured Claim shall be disallowed and shall not be entitled to any distribution. |
| 2 | Secured Claim of Prime Jet against Profundity (Claim 2) | Impaired | Entitled to Vote | Class 2 claims of $882,750.56 (the "PJ Profundity Secured Claim") have been satisfied in full by payment of $695,000 at the closing of the 363 Sale of the N144PK. The balance of the PJ Profundity Secured Claim shall be disallowed and shall not be entitled to any distribution. |

| 3 | Priority Claims | Unimpaired | Deemed to Accept | Certain priority Claims that are referred to in § 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.<br><br>The Debtors do not anticipate any claimants asserting Claims under § 507(a)(1), (4), (5), (6), and (a)(7) of the Code. |
| 4 | General Unsecured Claims Against Naboo | Impaired | Entitled to Vote | Holders of Allowed Class 4 General Unsecured Claims of Naboo shall receive, after payment of all Allowed Secured, Administrative Claims, Professional Fee Claims, U.S. Trustee Fees, Superpriority Claims and Priority Claims, pro rata payments of Cash available from the sale of the N450MB and any other assets of Naboo, including without limitation any Litigation Proceeds on the applicable Distribution Date. |
| 5 | General Unsecured Claims Against Profundity | Impaired | Entitled to Vote | Holders of Allowed Class 5 General Unsecured Claims of Profundity shall receive, after payment of all Allowed Secured, Administrative Claims, Professional Fee Claims, U.S. Trustee Fees, Superpriority Claims and Priority Claims, pro rata payments of Cash available from the sale of the N144PK and any other assets of Profundity, including without limitation any Litigation Proceeds on the applicable Distribution Date. |
| 6 | Equity Interests of Naboo | Impaired | Deemed to Reject | Equity interests of Naboo will receive no distribution and shall retain their interest solely for the purposes of closing the business and filing a notice of dissolution within |

| | | | | 30 days of the final Distribution Date. |
|---|---|---|---|---|
| 7 | Equity Interests of Profundity | Impaired | Deemed to Reject | Equity interests of Profundity will receive no distribution and shall retain their interest solely for the purposes of closing the business and filing a notice of dissolution within 30 days of the final Distribution Date. |

## V.        TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A.    Treatment of Claims and Interests

#### 1.    Prime Jet Claims against Naboo (Class 1)

##### a.    Classification

Class 1 consists of Prime Jet's secured claims against Naboo.

##### b.    Impairment and Voting

Class 1 is impaired. Holders of Allowed Class 1 Claims are entitled to vote to accept or reject this this Plan.

##### c.    Treatment

The Allowed Class 1 Claims shall be/has been satisfied in full by payment of $850,000 in Cash from the net proceeds[2] of a 363 Sale of the N450MB at the closing of a 363 Sale of the N450MB or within 5 days of receiving court authority to make such payment. The balance of the PJ Naboo Secured Claim shall be disallowed and shall not be entitled to any distribution.

#### 2.    Prime Jet Claims against Profundity (Class 2)

##### a.    Classification

Class 2 consists of Prime Jet's secured claims against Profundity.

##### b.    Impairment and Voting

Class 2 is impaired. Holders of Allowed Class 2 Claims are entitled to vote to accept or reject this this Plan.

##### c.    Treatment

The Allowed Class 2 Claims has been satisfied in full by payment of $695,000 in Cash

---

[2] Net proceeds means the total sale proceeds less all costs of sale including the Broker commissions, expenses and other sale costs including potential tax liabilities ("Net 363 Proceeds").

from the net proceeds[3] of the 363 Sale of the N144PK. The balance of the PJ Profundity Secured Claim shall be disallowed and shall not be entitled to any distribution.

     3.    **Priority Claims (Class 3)**

     a.    <u>Classification</u>

Class 3 consists of all Allowed Priority Claims, if any, against the Debtors.

     b.    <u>Impairment and Voting</u>

Class 3 is unimpaired. Holders of Allowed Class 3 Priority Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code and, thus, are not entitled to vote to accept or reject the Plan.

     c.    <u>Treatment</u>

Except to the extent that a Holder of an Allowed Priority Claim agrees to less favorable treatment, in settlement and release of each Allowed Priority Claim, each Holder of an Allowed Priority Claim shall receive, on account of its Allowed Priority Claim, payment in full in Cash as soon as reasonably practicable after the later of the Effective Date and the date on which such Priority Claim becomes an Allowed Priority Claim.

     4.    **General Unsecured Claims Against Naboo (Class 4)**

     a.    <u>Classification</u>

Class 4 consists of all General Unsecured Claims against Naboo.

     b.    <u>Impairment and Voting</u>

Class 4 is impaired, and Holders of Allowed General Unsecured Claims are entitled to vote to accept or to reject the Plan.

     c.    <u>Treatment</u>

Except to the extent that a Holder of an Allowed General Unsecured Class 4 Claim agrees to a less favorable treatment, in settlement and release of each Allowed General Unsecured Class 4 Claim, each Holder of an Allowed General Unsecured Class 4 Claim shall receive on account of such Allowed General Unsecured Class 4 Claim after payment of all Allowed Secured, Administrative Claims, Professional Fee Claims, U.S. Trustee Fees, Superpriority Claims and Priority Claims:

such Holder's Pro Rata share of the Cash available from of the sale of the N450MB and from

---

[3] Net proceeds means the total sale proceeds less all costs of sale including the Broker commissions, expenses and other sale costs including potential tax liabilities ("Net 363 Proceeds").

any other assets that are owned by Naboo, including without limitation Litigation Proceeds, if any, which shall be paid on the applicable Distribution Date.

     5.     **General Unsecured Claims Against Profundity (Class 5)**

         a.    <u>Classification</u>

Class 5 consists of all General Unsecured Claims against Profundity.

         b.    <u>Impairment and Voting</u>

Class 5 is impaired, and Holders of Allowed General Unsecured Claims are entitled to vote to accept or to reject the Plan.

         c.    <u>Treatment</u>

Except to the extent that a Holder of an Allowed General Unsecured Class 5 Claim agrees to a less favorable treatment, in settlement and release of each Allowed General Unsecured Class 5 Claim, each Holder of an Allowed General Unsecured Class 5 Claim shall receive on account of such Allowed General Unsecured Class 5 Claim after payment of all Allowed Secured, Administrative Claims, Professional Fee Claims, U.S. Trustee Fees, Superpriority Claims and Priority Claims:

such Holder's Pro Rata share of the Cash available from the sale of the N144PK and from any other assets that are owned by Profundity, including without limitation Litigation Proceeds, if any, on the applicable Distribution Date.

     6.     **Equity Interests In Naboo**

         a.    <u>Classification</u>

Class 6 consists of all Equity Interests in Naboo.

         b.    <u>Impairment and Voting</u>

Class 6 is impaired, and Holders of Equity Interests in Naboo are not entitled to vote to accept or to reject the Plan.

         c.    <u>Treatment</u>

Holders of Equity interests in Naboo in Class 7 will receive no distribution and shall retain their interest solely for the purposes of closing the business and filing a notice of dissolution within 30 days of the final Distribution Date. Such interests will be cancelled, released and extinguished, and will be of no further force or effect.

     7.     **Equity Interests in Profundity (Class 7)**

a.    <u>Classification</u>

Class 7 consists of all Equity Interests in Profundity.

a.    <u>Impairment and Voting</u>

Class 7 is impaired, and Holders of Equity Interests in Profundity are not entitled to vote to accept or to reject the Plan.

b.    <u>Treatment</u>

Holders of Equity interests in Profundity in Class 7 will receive no distribution and shall retain their interest solely for the purposes of closing the business and filing a notice of dissolution within 30 days of the final Distribution Date. Such interests will be cancelled, released and extinguished, and will be of no further force or effect.

**B.    <u>Modification of Treatment of Claims and Interests</u>**

The Debtors, reserve the right to modify the treatment of any Allowed Claim or Equity Interest in any manner adverse only to the Holder of such Claim or Equity Interest at any time after the Effective Date upon the consent of the Holder of the Claim or Equity Interest whose Allowed Claim or Equity Interest, as the case be, is being adversely affected.

## VI. <u>MEANS FOR IMPLEMENTATION</u>

**A.    <u>Sales of Aircrafts</u>**

The Profundity Aircraft sale was completed consistent with this Court's *Order Granting Profundity's Expedited Motion For Entry Of Order Approving Proposed Sale Of Aircraft Free And Clear Of All Liens, Claims, Encumbrances, And Interests And To Pay Fees And Costs Associated With Same On Shortened Notice* (ECF #530. Naboo anticipates filing a 363 Motion on or before August 28, 2024.  In the event that Naboo fails to close on a sale of the Naboo Aircraft on or before October 28, 2024, Naboo will file a motion to seek an extension of the October 28, 2024 deadline or other relief with the Bankruptcy Court.

It is anticipated that the sales of the Aircrafts will be sufficient to pay all Secured, Superpriority Administrative, Administrative, Priority and Statutory claims as well as a modest but as yet unknown distribution to General Unsecured Claims.

**B.    <u>Prosecution and Resolution of Litigation Claims</u>**

From and after the Effective Date, the Debtors shall have the sole responsibility, standing (including derivative standing), and authority, to prosecute and settle all Litigation Claims

under the Plan and the Plan Confirmation Order, subject to notice to the creditors and an opportunity to be heard. Notwithstanding the foregoing, the Debtors acknowledge that under the GV Settlement the Debtors release, waive and discharge TapJets, Inc.; TapJets Holdings, Inc.; Maria Kesselman; Eugene Kesselman; the individual known to the Parties as Individual-1; Peter Nomikos; Gulfgen LLC; Liu Hui; and Vision Depot Ltd. from all claims and causes of action (the "Released Claims"). From and after the Effective Date, the Debtors shall have exclusive rights, powers, and interests of the Estates, to pursue, settle, or abandon such Litigation Claims as the sole representatives of the Estates under section 1123(b)(3) of the Bankruptcy Code, subject to notice to the creditors and an opportunity to be heard. Any and all Litigation Claims that are not expressly released or waived under the Plan or the GV Settlement are reserved and preserved and revest in the Debtors. No Person may rely on the absence of a specific reference in the Plan or the Plan Supplement to any Litigation Claim against it as any indication that the Debtors will not investigate or pursue any and all available Litigation Claims against such Person. The Debtors expressly reserve all Litigation Claims, except for Litigation Claims against any Person that are expressly released or waived under the Plan, GV Settlement, or have otherwise been released under any agreement or Final Order, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Litigation Claims upon, after, or as a consequence of Confirmation or substantial consummation of the Plan. Notwithstanding the foregoing, if Debtor fails or refuses to pursue a Litigation Claim, any creditor may seek court authority to do so by filing a motion and the Court approving same by entry of an order granting such authority.

Unless otherwise provided in this Plan, for the avoidance of doubt, the Debtors expressly reserve the right to pursue all claims and Causes of Action except for the Released Claims.

### C.    Effectuating Documents and Further Transactions

Upon entry of the Plan Confirmation Order, the Debtors shall be authorized and required to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, notices, resolutions, programs, and other agreements, instruments, and/or documents, and take such acts and actions as may be reasonably necessary or appropriate to effectuate, implement, substantially consummate, and/or further evidence the terms and conditions of the Plan and any transactions described in or contemplated by the Plan. The Debtors, as applicable, may, and all Holders of Allowed Claims receiving Distributions under the Plan, at the request or direction of the Debtors, as applicable, shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### D.    Authority to Act

Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under the Plan that would otherwise require approval of the members, managers, or other owners, direct or indirect, of the Debtors shall be deemed to have occurred and shall be in

effect prior to, on, or after the Effective Date (as applicable) under applicable law, without any further vote, consent, approval, authorization, or other action by such members, managers, or other owners of the Debtors or notice to, order of, or hearing before, the Bankruptcy Court. The Debtors are authorized to execute, deliver, file, or record such contracts, instruments, releases,and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### E.    **Cancellation of Documents**

On the Effective Date, except to the extent otherwise provided in the Plan, any and all notes, instruments, debentures, certificates and other documents evidencing Claims against and Equity Interests in the Debtors shall be deemed automatically extinguished, canceled, and of no further effect with the Debtors having no continuing obligations thereunder, and shall be deemed rejected.  Any and all notes, instruments, debentures, certificates and other documents that are assumed by a Purchaser under a 363 Sale Agreement shall survive but shall only have effect and application with respect to the Purchaser, to the extent that the Purchaser assumed the obligations under such documents.

### F.    **Release of Liens**

Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement or document created under the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other interests in or against any property of the Estates shall be deemed fully released without any further action of any party, including, but  not limited to, further Order of the Bankruptcy Court or filing updated schedules or statements typically filed under the Uniform Commercial Code or other applicable law.

### G.    **Exemption from Certain Taxes and Fees**

Under section 1146(a) of the Bankruptcy Code, the making or delivery of any instrument or transfer from a Debtor, or to any other Person under the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and the Plan Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the forgoing instruments or other documents without the payment of any such tax or governmental assessment.

### H.    **Privileges Maintained**

All Privileges of the Debtors shall be maintained exclusively by the Debtors.

I.       **Filing of Monthly and Quarterly Reports and Payment of Statutory Fees**

The Filing of the final monthly operating report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Debtors. All Statutory Fees shall be payable as set forth in Section V.C hereof and such obligation shall continue until such time as the Chapter 11 Cases are closed, dismissed, or converted. All monthly operating reports covering  pre- Effective Date periods shall be prepared and filed by the Debtors.

J.       **Closing of the Chapter 11 Cases**

After the final Distribution Date, the Debtors shall seek authority from the Bankruptcy Court to close the Chapter 11 Cases and issue a final decree in accordance with the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

VII.      **PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN**

A.       **Distribution Record Date; Transferability**

After reserving sufficient funds for anticipated US Trustee fees, the Debtors will make distributions on the Distribution Dates.

B.       **Method of Payment**

Unless otherwise expressly agreed, in writing, all Cash payments to be made under the Plan shall be made by check drawn on  a domestic bank or an electronic wire transfer.

C.       **Claims Objection Deadline**

The Debtors, and any other party in interest to the extent permitted under section 502(a) of the Bankruptcy Code, shall File and serve any objection to any Claim no later than  the Claims Objection Deadline; provided, however, the Claims Objection Deadline may be extended by the Bankruptcy Court from time to time upon motion and notice by the Debtors. The filing of such a motion shall automatically extend  the  Claims Objection Deadline until entry of an order on account of such motion.

D.       **No Distribution Pending Allowance**

Notwithstanding any other provision of the Plan, no Distribution of Cash or other property shall be  made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order or as otherwise permitted by the Plan.
.

### E.    Reserve of Cash Distributions

On any date that Distributions are to be made under the terms of the Plan, the Debtors shall reserve Cash or property equal to 100% of the Cash or property that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto and funds necessary to pay anticipated administrative expenses and US Trustee fees.   Such Cash or property shall be held in trust for the benefit of the Holders of all such Disputed Claims, Administrative Claims, and US Trustee fees pending determination of their entitlement thereto.

### F.    Distribution After Allowance

Within the later of (i) seven (7) Business Days after such Claim becomes an Allowed Claim and (ii) a Distribution Date, Debtors shall distribute, to the extent available, all distributable Cash or other property reserving only such funds as are reasonably necessary for administrative fees and costs and US Trustee fees.

### G.    Delivery of Distributions

Except as provided herein, Distributions to Holders of Allowed Claims shall be made: (i) at the addresses set forth on the respective proofs of Claim last Filed by such Holders; (ii) at the addresses set forth in any written notices of address changes delivered to the Debtors after the date of any related proof of Claim; or (iii) at the address reflected in the Schedules if no proof of Claim is Filed and the Debtors have not received a written notice of a change of address.

If the Distribution to the Holder of any Claim is returned to the Debtors as undeliverable, no further Distribution shall be made to such Holder unless and until the Debtors are notified in writing of such Holder's then current  address. Undeliverable Distributions shall remain in the possession of the Debtors until the earlier of (i) such time as a Distribution becomes deliverable or (ii) such undeliverable Distribution becomes an Unclaimed Distribution under Section X.H of the Plan.

### H.    Unclaimed Distributions

Any Cash or other property to be distributed under the Plan shall revert to the Debtors if it is not claimed by the Holder within one hundred and twenty (120) days after the date of such Distribution. If such Cash or other property is not claimed on or before such date, the Distribution made to such Holder shall be deemed to be reduced to zero and such returned, undeliverable, or unclaimed Distributions shall be donated to the Bankruptcy Bar Foundation of the Southern District of Florida.

### I.    Set-Off

Except as otherwise provided herein, the Debtors retain the right to reduce any Claim (except the claims subject to prior settlement or the GV Settlement) filed after the Claims Bar Date by way of setoff in accordance with the Debtors' books and records.  Rights of a

setoff against any Entity or Person are preserved for the purpose of asserting such rights as a defense to any Claims or Causes of Action of the Debtors, or their Estates and regardless of whether such Entity or Person is the Holder of an Allowed Claim.

### J.    **Postpetition Interest**

Interest shall not accrue on any Claim, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date. No prepetition Claim shall be Allowed to the extent it is for post-petition interest or other similar charges.

### K.    **Distributions After Effective Date**

For Disputed Claims as of the Effective Date, any Distributions made after the Effective Date to Holders of such Disputed Claims (which later become Allowed Claims after the Effective Date) shall be deemed to have been made on the Effective Date or Distribution Date, whichever is earlier.

### L.    **Distributions Free and Clear**

Except as may be otherwise provided in the Plan, all Distributions hereunder shall be free and clear of any Liens, Claims, encumbrances, and other interests.

### M.    **Allocation of Distributions Between Principal and Interest**

To the extent that any Allowed Claim entitled to a Distribution under the Plan comprises indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

### N.    **De-Minimis Distribution and Donation**

There shall be no Distribution on account of Allowed General Unsecured Claims to the extent such Distribution will result in a payment of less than $50.00 to the Holder of such Claim, and such amount otherwise payable upon such Claim shall revert back to the Debtors. Unless otherwise set forth in this Plan, the Debtors may donate remaining Assets of the Debtors' estates to a charitable institution, including the Bankruptcy Bar Foundation of the Southern District of Florida, if the Distribution of such Assets is too costly, too burdensome, or impracticable.

### O.    **Prepayment**

Except as otherwise provided herein or the Plan Confirmation Order, the, shall have the right to prepay, without penalty, all or any portion of an Allowed Claim.

## VIII.    EXECUTORY CONTRACTS

### A.    Rejection of Executory Contracts

On the Effective Date, all Executory Contracts not previously assumed and/or assigned (including in connection with a 363 Sale and under a 363 Sale Order), not subject to a pending motion to assume and/or assign as of the Effective Date, or not rejected before the Effective Date, will be deemed rejected.  The Plan Confirmation Order shall constitute an order approving such rejection as of the Effective Date.

Unless otherwise specified, each Executory Contract assumed or rejected by the Debtors shall be assumed or rejected cum onere, to include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly to any agreement, instrument, or other document that in any manner affects such Executory Contract.

### B.    Deadline for Filing Proofs of Claim Relating to Executory Contracts Rejected Under the Plan

**If the rejection by the Debtors, under the Plan or otherwise, of an Executory Contract gives rise to a Claim for rejection damages in accordance with section 502(g) of the Bankruptcy Code, a proof of Claim must be filed with the Bankruptcy Court at the following address, 301 North Miami Avenue, Room 150, Miami, FL 33128 by no later than thirty (30) days after the Plan Confirmation Date or such prior date as is ordered by the Court in connection with the sale process. Any proofs of Claim with respect to a Rejection Damages Claim not filed within such time shall be forever barred from assertion against the Debtors, the Estates and their property and such Persons holding such Claims will not receive and will be barred from receiving any Distributions on account of such untimely Rejection Damages Claims, absent further order of the Bankruptcy Court. All Rejection Damages Claims will be treated as General Unsecured Claims under the Plan and, to the extent they are deemed Allowed General Unsecured Claims, will receive the treatment afforded Allowed General Unsecured Claims.**

## IX.    INJUNCTION

### A.    Injunction to Protect Estate Assets

Except as otherwise provided in the Plan or the Plan Confirmation Order, from and after the Effective Date, all Persons and Entities who have held, hold, or may hold Claims or rights giving rise to any equitable relief against the Assets or any Equity Interests in the Debtors arising prior to the Effective Date are permanently enjoined from taking any of the following actions against the Estates, or any of their respective property or Assets (collectively, the "Estate Assets") on account of any such Claims or Equity Interests: (a) commencing or continuing, in any manner or in any place, any action or proceeding seeking to collect or to recover in any manner against, or assert control or dominion over, the Estate Assets; (b) enforcing, attaching, collecting, or recovering in any manner against the Estate Assets, any judgment, award, decree or order; (c) creating, perfecting, or enforcing any Lien or encumbrance against the Estate

Assets; (d) asserting recoupment unless such recoupment was formally asserted in a timely Filed proof of Claim or in a pleading Filed with the Bankruptcy Court prior to entry of the Plan Confirmation Order (notwithstanding any indication in any proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment) or right of subrogation of any kind against any debt, liability, or obligation due to the Debtors; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with or with respect to any such Claims or Interests discharged, released, exculpated, or settled pursuant to the Plan or that is otherwise inconsistent with the provisions of the Plan; provided, however, that such Persons and Entities shall not be precluded from exercising their rights under and consistent with the terms of the Plan, or the Plan Confirmation Order.

**B.**     Term of Injunctions or Stays

Unless otherwise provided in the Plan or Plan Confirmation Order, all injunctions or stays in the Chapter 11 Cases (pursuant to sections 105 or 362 of the Bankruptcy Code or any Order of the Bankruptcy Court) and existing on the Plan Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the later of the Effective Date and the date indicated in the Order providing for such injunction or stay and to the extent consistent with the terms and provisions of the Plan or the Plan Confirmation Order, as applicable. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

**C.**     Injunction Against Interference with Plan

Upon the Bankruptcy Court's entry of the Plan Confirmation Order, all Holders of Claims and Equity Interests, and other parties in interest, along with their respective Related Persons, shall be enjoined from taking any actions to interfere with the Debtors' and their respective Related Persons' implementation or substantial Consummation of the Plan. Notwithstanding the foregoing, nothing in this Plan or the Plan Confirmation Order shall release any of the Litigation Claims.

**D.**     Necessity and Approval of Injunctions

The injunctions set forth in Section XII of the Plan are not severable and are appropriately tailored and constitute integral consideration and critical parts of the Plan, and the affected parties have relied on the efficacy and conclusive effects of such injunctions and on the Bankruptcy Court's retention of jurisdiction to enforce such injunctions when making concessions and exchanging consideration in connection with the Chapter 11 Cases and under the Plan. Under Bankruptcy Code sections 1123(a)(5), 1123(b)(3), and 1123(b)(6), as well as Bankruptcy Rule 9019, entry of the Plan Confirmation Order shall constitute the Bankruptcy Court's approval of the injunctions set forth in Section XII of the Plan and shall constitute the Bankruptcy Court's finding that such injunctions are: (i) in exchange for the good, valuable, and reasonably equivalent consideration provided by the affected parties; (ii) in the best interests of the Debtors, the Estates, and Holders of Claims and Interests; (iii)

fair, equitable, and reasonable;and (iv) a bar to all Persons barred as set forth in the Plan asserting any Claims or causes of action released under the Plan in favor of such parties.

## X.    CONDITIONS PRECEDENT TO AND OCCURRENCE OF THE <u>EFFECTIVE DATE</u>

### A.    <u>Conditions Precedent to the Effective Date</u>

The Plan shall not become effective unless and until the following conditions shall have been satisfied or waived in accordance with Section X.D of the Plan:

> 1.    The Plan Confirmation Order shall have become a Final Order in full force and effect with no stay thereof then in effect.

> 2.    The Plan Confirmation Date shall have occurred and no request for revocation of the Plan Confirmation Order under section 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending.

> 3.    The Sale of the Naboo Airplane shall have been consummated and the final Distribution shall have been paid.

> 4.    The GV Settlement shall be approved by Final Order of the Bankruptcy Court (the "GV Settlement Condition").

### B.    <u>Establishing the Effective Date</u>

The calendar date to serve as the Effective Date shall be a Business Day of, on, or promptly following the satisfaction or waiver of all conditions precedent provided in Section X herein  which date will be selected by the Debtors, but shall be no later than October 28, 2024, unless extended by Bankruptcy Court Order after notice and hearing

### C.    <u>Effect of Failure of Conditions</u>

If each condition to the Effective Date has not  been satisfied or duly waived within one hundred and twenty (120) days after the Plan Confirmation Date, then upon motion by any party in interest if applicable, and upon notice to such parties in interest, the Bankruptcy Court may consider whether the condition to the Effective Date has been substantially complied with in order to determine that the Effective Date has occurred. However, if the Plan Confirmation Order is vacated, the Plan shall be deemed null and void in all respects and nothing contained herein shall (i) constitute an admission or a waiver or release of any Claims by or against the Debtors, or (ii) prejudice in any manner the rights of the Debtors.

**D.      Waiver of Conditions to Confirmation and Effective Date**

Each of the conditions to the Effective Date other than the GV Settlement Condition may be waived, in whole or in part, by the Debtors, subject to notice to the creditors and an opportunity to be heard.

**XI.      RETENTION OF JURISDICTION**

Following the Effective Date, the Bankruptcy Court shall retain jurisdiction to the fullest extent provided by law, including, without limitation over all matters arising in, arising under, and related to the Chapter 11 Cases as is legally permissible, including, without limitation, such jurisdiction as is necessary to ensure that the interests and purposes of the Plan are carried out. The Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases, and the Plan, for, among other things, the following purposes:

1.      To hear and determine any objections to Claims and to address any issues relating to Disputed Claims;

2.      To enter and implement such Orders as may be appropriate in the event the Plan Confirmation Order is for any reason stayed, revoked, modified, or vacated;

3.      To issue such Orders in aid of execution and Consummation of the Plan;

4.      To consider any amendments to or modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any Order of the Bankruptcy Court, including, without limitation, the Plan Confirmation Order;

5.      To hear and determine all requests for compensation and reimbursement of expenses under section 330 or 503 of the Bankruptcy Code;

6.      To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the 363 Sale Documents, , including the releases, exculpations, and injunctions provided hereunder;

7.      To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

8.      To hear any other matter not inconsistent with the Bankruptcy Code;

9.      To enter a final decree closing the Chapter 11 Cases;

10.      To ensure that Distributions to Holders of Allowed Claims are accomplished under the provisions of the Plan;

11. To decide or resolve any motions, adversary proceedings, contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases, the 363 Sale Documents;

12. To issue injunctions, enter and implement other Orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of the Plan;

13. To approve, as may be necessary or appropriate, any Claims settlement entered into or offset exercised by the Debtors;

14. To determine any other matters that may arise in connection with or related to the Plan, the Plan Confirmation Order, the 363 Sale Documents, or any contract, instrument, release, indenture or other agreement or document created or implemented in connection with the Plan;

15. To enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, exculpations, and rulings entered in connection with the Chapter 11 Cases (whether or not the Chapter 11 Cases have been closed), including, without limitation, the 363 Sale Order;

16. To resolve disputes concerning a 363 Sale Agreement, a 363 Sale Order, and any related documents or matters;

17. To resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof;

18. To hear, decide and resolve any motions, adversary proceedings, contested or litigated matters involving or related to Litigation Claims; and

19. To resolve any other matter or for any purpose specified in the Plan, the Plan Confirmation Order, or any other document entered into in connection with any of the foregoing.

## XII.  MISCELLANEOUS PROVISIONS

### A.  Amendment or Modification of the Plan

The Plan or any exhibits thereto, including, without limitation, the Plan Supplement, may be amended, modified, or supplemented by the Plan Proponents in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure under section 1125 of the Bankruptcy Code. In addition, after the Plan Confirmation Date, the Debtors , may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Plan

Confirmation Order with respect to such matters as may be necessary to carry out the purposes and effects of the Plan. The Debtors may make appropriate technical adjustments and modifications to the Plan prior to the Effective Date without further order or approval of the Bankruptcy Court.

### B.    <u>Severability</u>

The terms of the Plan and Disclosure Statement are not severable; all of the terms and conditions are fully integrated. Nevertheless, if, prior to the entry of the Plan Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Plan Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable under its terms.

### C.    <u>Revocation or Withdrawal of the Plan</u>

The Plan Proponents reserve the right to revoke or withdraw the Plan before the Plan Confirmation Date. If the Plan Proponents revoke or withdraw the Plan before the Plan Confirmation Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Debtors or to prejudice in any manner the rights of the Debtors or any other parties in any further proceedings involving the Debtors.

### D.    <u>Binding Effect</u>

The Plan shall be binding upon and inure to the benefit of the Debtors, the Holders of Claims, the Holders of Interests, and all parties-in-interest and their respective successors and assigns.

### E.    <u>Notices</u>

All notices to or requests of the Plan Proponents by parties in interest in connection with the Plan shall be in writing and delivered either by (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) overnight delivery, all charges prepaid, and shall be deemed to have been given when received by:

If to the Debtors (prior to the Effective Date):

        Profundity LLC
        7270 NW 12th ST.
        Suite 760
        Miami, FL 33126
        Attn:  Eugene Kesselman

        Naboo Royal Cruiser, LLC
        7270 NW 12th ST.
        Suite 760
        Miami, FL 33126
        Attn:  Eugene Kesselman

        -with a  copy
        to-

        Edelboim Lieberman PLLC
        2875 NE 191st St.
        Penthouse One
        Miami, Florida 33180
        Attn:  Brett D. Lieberman, Esq.

**F.**      **<u>Governing Law</u>**

Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal law is applicable, or to the extent an exhibit to the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law of such jurisdiction.

**G.**      **<u>Withholding and Reporting Requirements</u>**

In connection with the Consummation of the Plan, the Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements. All Claimants, as a condition to receiving any Distribution, shall provide the Debtors with a completed and executed Form W-9.   Failure to timely provide the Debtors with a completed and executed Form W-9 may result, at the option of the Debtors, inthe forfeiture by a Holder of Claim of its Distribution under the Plan.

**H.**      **<u>Headings</u>**

Headings are used in the Plan for convenience and reference only and shall not constitute a part of the Plan for any other purpose.

**I.**        **Exhibits/Schedules**

The Plan Documents are an integral part of the Plan and are hereby incorporated by reference and made a part thereof.

**J.**        **Filing of Additional Documents**

On or before substantial Consummation of the Plan, the Debtors, shall File such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan; provided that the Plan Supplement shall be Filed on or before seven (7) days prior to the Plan Confirmation Hearing.

**K.**        **No Admissions**

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by any Entity with respect to any matter set forth herein.

**L.**        **Successors and Assigns**

The rights, benefits, and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to  the benefit of any heir, executor, administrator, successor, or assignee of such Person or Entity.

**M.**        **Reservation of Rights**

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Plan Confirmation Order. The Filing of the Plan, any statement or provision contained therein, or the taking of any action by the Debtors with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights or Causes of Action of the Debtors, Holders of Claims, or Equity Interest before the Effective Date.

**N.**        **Inconsistency**

In the event of any inconsistency among the Plan, Disclosure Statement, or any other instrument or document created or executed under the Plan, the provisions of the Plan shall govern; provided that in the event of any inconsistency among the Plan and the Plan Confirmation Order, the provisions of the Plan Confirmation Order shall govern.

**O.**        **Dissolution of the Debtors**

Immediately following the Distribution of all of the Debtors' and the Estates' property under the terms of the Plan, on the Effective Date,the Debtors' members, directors, managers, and officers and any remaining employees shall be deemed to have resigned, the entity dissolved for all purposes and of no further legal existence under any applicable state or federal law, without the need to take any further action or file any plan of dissolution, notice,

or application with the Secretary of State of the State of Florida or any other state or government authority.

### P. Substantial Consummation

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**Profundity, LLC**

By: _/s/_ _____

    Name:  Eugene Kesselman
    Title:  Authorized Agent

**Naboo Royal Cruiser, LLC**

By: _/s/_ _____

    Name:  Eugene Kesselman
    Title:  Authorized Agent